<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE INSULIN PRICING LITIGATION | Case No. 3:17-cv-699 (BRM) (LHG)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Partial Motion to Dismiss filed by Defendant Novo Nordisk, Inc. ("Novo Nordisk"), Defendant Sanofi-Aventis U.S. LCC ("Sanofi"), and Defendant Eli Lilly and Company ("Eli Lilly") (collectively, "Defendants"), seeking to dismiss the putative plaintiffs' ("Plaintiffs") Second Amended Class Action Complaint ("Second Amended Complaint"). (ECF No. 263.) Plaintiffs filed an Opposition to Defendants' Partial Motion to Dismiss (ECF No. 269), and Defendants filed a Reply Brief to Plaintiff's Opposition (ECF No. 273). For the reasons set forth herein, Defendants' Partial Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

I.   BACKGROUND[1]

A.   **Factual Background[2]**

Plaintiffs are 108 individuals who filed the Second Amended Complaint on behalf of themselves and a proposed nationwide class of analog insulin consumers. (ECF No. 255 ¶¶ 19–235.) Plaintiffs bring this action on behalf of themselves and all others similarly situated under Federal Rule of Civil Procedure 23(a) and 23(b)(3). (ECF No. 255 ¶ 366.) The Plaintiffs define their class as,

> All individual persons in the United States and its territories who paid any portion of the purchase price for a prescription of Apidra, Basaglar, Fiasp, Humalog, Lantus, Levemir, Novolog, Tresiba, and/or Toujeo at a price calculated by reference to a benchmark rice, AWP (Average Wholesale Price)[3], or WAC (Wholesale Acquisition Price) for purposes other than resale.

(*Id.*) Specifically, the class includes uninsured consumers, consumers in high-deductible health plans, consumers who reach the Medicare Part D donut hole, and consumers with high coinsurance rates. (ECF No. 255 ¶ 369.) The Plaintiffs request this Court toll the class period to the "earliest date of the Defendant Drug Manufacturers' initiation of the scheme described herein." (ECF No. 255 ¶ 367.)

---

[1] The factual and procedural backgrounds of this matter are well known to the parties and were previously recounted by the Court in its Opinion granting in part and denying in part Defendants' Motion to Dismiss the First Amended Complaint. (ECF No. 252.) The Court, therefore, only includes the facts and procedural background relevant to this Motion.

[2] For the purpose of this motion to dismiss, the Court accepts the factual allegations in the Second Amended Complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Phillips v. City of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

[3] The Plaintiffs frequently use the terms "benchmark price" and "sticker price" to refer to the AWP. (*See, e.g.*, ECF No. 255 ¶¶ 1, 2, 252.)

Defendants are pharmaceutical companies headquartered in the United States. (ECF No. 255 ¶¶ 236–238.) Defendants research, develop, and manufacture prescription medications. (*Id.*) Defendant Eli Lilly manufactures Humalog and Basaglar; Defendant Novo Nordisk manufactures Fiasp, Novolog, Levemir, and Tresiba; and Defendant Sanofi-Aventis manufactures Apidra, Lantus, and Toujeo. (*Id.*)

### B.    Procedural History

On March 29, 2018, Plaintiffs filed the First Amended Class Action Complaint ("First Amended Complaint") against Defendants (ECF No. 131) and on May 14, 2018, Defendants moved to dismiss. (ECF No. 158). The Court held oral argument on January 22, 2019. (ECF No. 247.) On February 15, 2019, the Court issued an Opinion granting in part and denying in part Defendants' Motion to Dismiss the First Amended Complaint. (ECF No. 252.) On March 18, 2019, Plaintiffs filed the Second Amended Complaint, alleging forty-nine counts against Defendants. (ECF No. 255.) On May 17, 2019, Defendants filed a Partial Motion to Dismiss. (ECF No. 263.)

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A

court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

## B.    Rule 9(b)

Pursuant to Federal Rule of Civil Procedure 9(b), when alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake, although intent, knowledge, and other conditions of a person's mind may be alleged generally." *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (citations omitted); *see also U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (holding that a "plaintiff alleging fraud must . . . support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the who, what, when, where and how of the events at issue") (citations omitted). Accordingly, "a party must plead [its] claim with enough particularity to place defendants on notice of the 'precise misconduct with which they are charged.'" *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## III.   DECISION

Defendants' Partial Motion to Dismiss seeks to dismiss Counts One and Two of the Second Amended Complaint (the "RICO Claims")[4] (ECF No. 263 at 4–10), all claims relating to Tresiba, Fiasp, and Basaglar (the "New Insulins" and the "New Insulin Claims")[5] (*id.* at 10–12), and ten separate state law claims (the "State Law Claims")[6] (*id.* at 13–23). The Court addresses each of the parties' arguments in turn.

### A.      The RICO Claims

In its February 15, 2019 Opinion, the Court dismissed Plaintiffs' RICO claims, finding that "[a]lthough Plaintiffs have adequately pled the various elements of a RICO claim," they were indirect purchasers and, therefore, they "lack[ed] standing to maintain [the] action." (ECF No. 252 at 25.) Plaintiffs concede they "have not amended their allegations to claim that the [Plaintiffs] purchase their analog insulins directly from [Defendants]." (ECF No. 255 at 141 n.36) Plaintiffs, nonetheless, seek an injunction "to prevent [Defendants] from reporting benchmark prices that do not approximate their true net prices." (*Id.* at 142.)

Defendants contend Plaintiffs' RICO claim for an injunction should be dismissed because RICO does not grant private Plaintiffs a right of action for injunctive relief. (ECF No. 263-1 at 5.) The Third Circuit has not directly addressed whether RICO allows for a private right of equitable relief. Defendants point to several cases within this district, however, that have held RICO does

---

[4] Plaintiffs bring the RICO Claims pursuant to 18 U.S.C. §§ 1961, *et seq*.

[5] Tresibia and Fiasp are manufactured by Novo Nordisk; Basaglar is manufactured by Eli Lilly. (ECF No. 255 ¶¶ 308, 309.)

[6] The State Law Claims include, Count Six (Arizona), Count Nine (California), Count Ten (Colorado), Count Fifteen (Georgia), Count Twenty-One (Louisiana), Count Twenty-Seven (Minnesota), Count Twenty-Eight (Mississippi), Count Forty-Five (Utah), Count Forty-Seven (Washington), and Count Forty-Eight (West Virginia).

not establish a private right of equitable relief. *See Curley v. Cumberland Farms Dairy, Inc.*, 728 F. Supp. 1123, 1137 (D.N.J. 1989); *see also Futterknecht v. Thurber*, 2015 WL 4603010, at *4 (D.N.J. July 30, 2015). These cases came to this conclusion by analyzing both the legislative history of RICO and the Department of Justice's Manual. *See, e.g. Futterknecht*, 2015 WL 4603010, at *4.

Plaintiffs argue this Court should instead look to opinions issued by the Second and Seventh Circuits,[7] wherein the courts found § 1964 of the RICO Act authorizes private plaintiffs to seek final injunctive relief. (ECF No. 269 at 1.) Plaintiffs, however, are unable to point to any cases within this Circuit or District that has adopted the views of the *Donziger* or *Scheidler* courts.[8] As such, this Court declines to stray from the weight of persuasive authority and holds that a private party may not seek equitable relief under RICO. Accordingly, Defendants' Partial Motion to Dismiss Plaintiffs' request for injunctive relief under RICO is **GRANTED**.

**B.     The New Insulin Claims**

In their Second Amended Complaint, Plaintiffs, for the first time, include claims relating to the New Insulins. (*Compare* ECF No. 131 *with* ECF No. 255.) Defendants contend Plaintiffs include "no factual allegations connecting [the New Insulins] to the purported 'scheme'" and as such, the New Insulin Claims should be dismissed. (ECF No. 263-1 at 11.) The crux of Defendants'

---

[7] *Chevron Corp. v. Donziger*, 833 F.3d 74, 139 (2d Cir. 2016); *Nat'l Org. for Women v. Scheidler*, 267 F.3d 687, 698 (7th Cir. 2001), *rev'd on other grounds*, 537 U.S. 393 (2003).

[8] Although not cited by either party, at least two courts in this District have considered whether RICO authorizes a private plaintiff to seek equitable relief. First, in *Adamo v. Jones*, the court held that "is not clear whether injunctive or equitable relief is available [to a private plaintiff]." No. 15-1073, 2016 WL 356031, at *12 (D.N.J. Jan. 29, 2016). Additionally, in a footnote in *Kaul v. Christie*, the court stated that "for the purposes of argument going forward, I assume that a plaintiff may obtain injunctive relief under RICO." No. 16-2364, 2019 WL 943656, at *28 n.40 (D.N.J. Feb. 24, 2019). However, neither of these cases explicitly held a private party may obtain equitable relief under RICO.

argument is that the New Insulins have only recently been introduced to the market and, therefore, "have prices that have remained relatively constant." (*Id.* at 12.) Defendants point to several figures, including in the Second Amended Complaint, that show Fiasp and Basaglar have only undergone a single price increase since their introduction, while Tresiba has undergone two. (*Id.*) Defendants argue this precludes Plaintiffs from arguing "'[D]efendants have engaged in an arms race of false benchmark price increases' in a 'lock-step' manner," as they do with regards to the other insulin products. (*Id.* at 11) (quoting ECF No. 255 ¶¶ 8, 9, 321.)

Conversely, Plaintiffs contend  they have alleged "a spread between list and net price[s] for [the New Insulins]." (ECF No. 269 at 16.) Moreover, the length of time the New Insulins have been on the market bears no relationship to whether their prices are the result of the same price-fixing scheme Plaintiffs allege regarding the other insulins. (*Id.* at 15–16.)

The Court finds Defendants' arguments unconvincing. On a motion to dismiss, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). While it is true, as Defendants contend, that Plaintiffs admit they "do not have access to [the New Insulins'] net prices," this is not fatal to their claim. The Second Amended Complaint includes a detailed depiction of the alleged fraudulent scheme as it relates to the other insulin products. (*See generally* ECF No. 255.) Plaintiffs allege Defendants have included the New Insulins in the same scheme. (*Id.*) At this stage of the litigation, the Court finds Defendants have failed to meet their burden of showing no claim has been presented. Accordingly, Defendants' Partial Motion to Dismiss the New Insulin Claims is **DENIED**.

### C.    The State Law Claims

#### i.    *Arizona*

Plaintiffs bring Count Six of the Second Amended Complaint, against all Defendants,

pursuant to The Arizona Consumer Fraud Act ("ACFA"), ARIZ. REV. STAT. ANN. §§ 44-1521, *et seq.* (2019) (ECF No. 255 ¶¶ 509–518.) The ACFA prohibits, *inter alia*:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby.

ARIZ. REV. STAT. ANN. § 44-1522.

Defendants argue that Plaintiffs' ACFA claim must be dismissed because, as indirect purchasers, Plaintiffs lack standing. (ECF No. 263-1 at 13.) Under the ACFA, a "subsequent purchaser is not within the class of consumers intended to be protected by the implied private cause of action." *Sullivan v. Pulte Home Corp.*, 290 P.3d 446, 454 (Ariz. Ct. App. 2012), *vacated in part on other grounds*, 306 P.3d 1 (Ariz. 2013). To further bolster their argument, Defendants cite to this Court's decision in *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, wherein the Court dismissed similar claims because the plaintiffs were indirect purchasers. No. 18-2211, 2019 WL 1418129, at *18 (D.N.J. Mar. 29, 2019).

Plaintiffs do not dispute this Court previously held indirect purchasers are barred from bringing a claim under ACFA, but imply that the Court erred by not considering the Arizona Supreme Court's decision in *Watts v. Medicis Pharmaceutical Corp.*, 365 P.3d 944, 947 (Ariz. 2016). In *Watts*, a plaintiff brought a complaint, pursuant to ACFA, against a drug manufacturer alleging consumer fraud and product liability. The *Watts* plaintiff "sought medical treatment for acne and received a prescription for Solodyn." *Id.* at 947. Along with her prescription, plaintiff received documentation, produced by the defendant drug manufacturer, that included drug safety information. *Id.* Among the information was the warning that "the safety of using [Solodyn] longer

than 12 weeks has not been studied and is not known." *Id.* Plaintiff was ultimately diagnosed with drug-induced lupus and hepatitis after receiving a subsequent prescription for Solodyn and taking it as directed for a period of 20 weeks. *Id.* at 947–48. The Arizona Supreme Court reversed the dismissal of plaintiff's ACFA claim finding that ACFA "the statute does not *expressly require* a direct merchant-consumer transaction." *Id.* at 953 (emphasis added). The court further held that to state a claim for consumer fraud under ACFA, "a plaintiff must show (1) a false promise or misrepresentation made in connection with the sale or advertisement of "merchandise," and (2) consequent and proximate injury resulting from the misrepresentation." *Id.* (citing *Kuehn v. Stanley,* 208 Ariz. 124, 129 ¶ 16, 91 P.3d 346, 351 (App.2004)).

*Watts*, however, is distinguishable from the present case. In *Watts*, plaintiff's allegations of consumer fraud related to "misrepresentations and omi[ssion of] material facts" made by the defendant drug manufacturer directly to the plaintiff, in the form from the documentation provided with Solodyn. *Id.* at 948, 953.[9] Here, as this Court previously articulated, "Plaintiffs allege their damages stem from artificially inflated AWPs paid by wholesalers and pharmacies *before* the consumers make their purchases from those intermediaries." (ECF No. 252 at 19 (emphasis added).) The Court finds the connection between the alleged misrepresentations of Defendants and Plaintiffs in the instant case too attenuated to comport with the holding of *Watts.* The Court, therefore, does not find Plaintiffs' arguments persuasive and reiterates the rationale it articulated in *MSP Recovery Claims.* Accordingly, Defendants' Partial Motion to Dismiss Count Six (Arizona) of the Second Amended Complaint is **GRANTED**.

---

[9] "[Plaintiff] alleged an actionable claim under the [A]CFA. She alleged that [Defendant] affirmatively misrepresented Solodyn by stating that '[t]he safety of using [Solodyn] longer than 12 weeks has not been studied and is not known,' even though it knew (as [Defendant's] full prescribing informational material states) that taking the drug for longer than twelve weeks can cause drug-induced lupus." *Watts*, 365 P.3d at 953.

### ii. *California*

Plaintiffs bring Count Nine of the Second Amended Complaint against all Defendants, pursuant to the California Unfair Competition Law (the "California UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq.* (ECF No. 255 ¶¶ 537–47.) The California UCL prohibits the use of "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.* § 17200.

Defendants contend Plaintiffs' California UCL claim should be dismissed to the extent they seek "restitution and disgorgement," because disgorgement is not an authorized remedy under the California UCL and Plaintiffs have pled no facts to support that they are entitled to restitution. (ECF No. 263-1 at 13–14)

As to disgorgement, the California Supreme Court has held that it is "not an authorized remedy" under the California UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 941, 942 (Cal. 2003). Plaintiffs appear to concede this point as they do not address Defendants' arguments regarding disgorgement in their Opposition Brief. (*See generally* ECF No. 269.)

As to restitution, Defendants argue that the California UCL only permits a court to order a "defendant to return money obtained through an unfair business practice to those persons in interest *from whom the property was taken*." *Korea Supply Co.*, 63 P.3d at 944 (emphasis added). Defendants contend  because Plaintiffs do not allege Defendants received money directly from them, they cannot bring suit under the California UCL. (ECF No. 263-1 at 14.)

Restitution is measured "by the defendant's gain, whereas damages measure[] the plaintiff's loss." *Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1081 (C.D. Cal. 2003), *on reconsideration in part* (June 5, 2003) (internal quotations omitted). "[I]n appropriate circumstances, the plaintiff in a [California UCL] claim may obtain restitution

from a defendant with whom the plaintiff did not deal directly." *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1498 (Cal. Ct. App. 2007). The California UCL requires that "the plaintiff must once have had an ownership interest in the money or property acquired by the defendant through unlawful means." *Id.* at 1500.

In *Clayworth v. Pfizer, Inc.*, the California Supreme Court found retail pharmacies could sustain an action under the California UCL against defendant drug manufacturers for restitution despite only having "indirect business dealings with [the m]anufacturers." 233 P.3d 1066, 1087 (Cal. 2010) (citing *Shersher*, 154 Cal. App. 4th at 1499–1500). The court noted that "while the voters clearly intended to restrict UCL standing, they just as plainly preserved standing for those who had had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices." *Id.* (citation omitted). The court found that the plaintiff pharmacies "paid more than they otherwise would have because of a price-fixing conspiracy in violation of state law" and, therefore, had established standing under the California UCL. *Id.*

Plaintiffs urge this Court to adopt the rationale articulated in *Clayworth* to this dispute. (ECF No. 269 at 21–22.) The Court, however, declines to do so. Here, the connection between Plaintiffs and Defendant drug manufacturers is a step beyond the relationship recognized in *Clayworth* and too attenuated to sustain a cause of action for restitution under the California UCL. Specifically, while the *Clayworth* court found plaintiffs had standing to pursue their claims, the crux of their decision rested upon the "business dealings" between the parties. 233 P.3d at 1087. Here, no such business relationship exists. Accordingly, Defendants' Partial Motion to Dismiss Count Nine (California) of the Second Amended Complaint to the extent Plaintiffs seek disgorgement and restitution is **GRANTED**.

### iii. *Colorado and Utah*

Plaintiffs bring Count Ten of the Second Amended Complaint pursuant to the Colorado Consumer Protection Act ("CCPA"), COLO. REV. STAT. §§ 6-1-101, *et seq.* and Count Forty-Five pursuant to The Utah Consumer Sale Practices Act ("UCSPA"), UTAH CODE ANN. §§ 13-11-1, *et seq.*, against all Defendants. (ECF No. 255 ¶¶ 548–56, 836–42.)

Defendants contend Plaintiffs' CCPA claim "should be dismissed to the extent that [P]laintiffs seek monetary damages" because the CCPA does not permit their recovery in class action claims. (ECF No. 263-1 at 15.) Defendants contend Plaintiffs' UCSPA claim should be dismissed for the same reason. (*Id.* at 20.)

Plaintiffs contend  Defendants' arguments should be rejected because: (1) "whether a state-law damages bar applies in federal court should be addressed at the class certification stage" (*id.* at 24); (2) Defendants' fail to analyze *Shady Grove*[10] in their Moving Brief (*id.* at 25); and (3) "[D]efendants' are incorrect on the merits" (*Id.* at 26).

As to whether this issue is best left to the class certification stage, Plaintiffs first rely on a case from the Northern District of California, wherein the court held that it was. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Products Liab. Lit.*, 349 F. Supp. 3d 881, 920 (N.D. Cal. 2018) ("[Defendant's] arguments focus on whether Plaintiffs can pursue *class* claims under certain state consumer laws, not on whether the claims themselves are well pled. Only the second question is at issue in a Rule 12(b)(6) motion to dismiss. The Court will therefore wait until the class certification stage to address whether Mississippi's and [the UCSPA's] class action limits apply."). To further bolster their argument, Plaintiffs cite to a series of district court decisions holding the same. (*See* ECF No. 269 at 25 n.25.)

---

[10] *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

Defendants argue the Court should disregard those decisions and instead follow two decisions issued in the District of New Jersey where courts dismissed, at the pleading stage, CCPA and UCSPA claims to the extent they sought monetary damages. *See, e.g.*, *In re Elk Cross Timbers Decking Marketing*, 2015 WL 6467730, at *17 (D.N.J. Oct. 26, 2015) (dismissing plaintiffs' CCPA claims); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 416–17 (D.N.J. 2018) (dismissing plaintiffs' UCSPA claims). Of these two cases, only *In re Lipitor* discussed the application of *Shady Grove* to the court's analysis. *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d at 414 (finding *Shady Grove* did not preclude dismissal of UCSPA and similar state law claims at the pleading stage and thus dismissing those claims with leave to amend). While the Court finds the *In re Lipitor* court's analysis thorough and well-reasoned, it does not find it dispositive and deems these issues better suited for disposition later in the litigation. Accordingly, Defendants' Partial Motion to Dismiss Counts Ten (Colorado) and Forty-Five (Utah) of the Second Amended Complaint is **DENIED**.

### iv.    Georgia

Plaintiffs bring Count Fifteen of the Second Amended Complaint, against all Defendants, pursuant to The Georgia Uniform Deceptive Trade Practices Act ("GDTPA"), Ga. Code Ann. §§ 10-1-370, *et seq.* (ECF No. 255 ¶¶ 593–98.) The GDTPA prohibits, *inter alia*, the "mak[ing of] false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." Ga. Code Ann. § 10-1-372 (11). Defendants contend Plaintiffs' GDTPA claim should be dismissed because "the alleged [deceptive] pricing 'scheme'" is not actionable under the statute. (ECF No. 263-1 at 15.)

Dismissal of a GDTPA claim is proper "in the absence of allegations that [defendant] presented [plaintiff] any price inducements to choose [the hospital] for medical care." *Cox v.*

*Athens Regional Medical Center*, 631 S.E.2d 792, 798 (2006) (also holding that hospital having "[a] separate pricing scheme for uninsured patients [that] is the result of agreements with insurers" did not, by itself, violate the GDTPA); *see also HLD Enterprises, Inc. v. Michelin N. Am., Inc.*, No. 03-2558, 2004 WL 2095739, at *4 (N.D. Ga. June 29, 2004) (granting dismissal after finding plaintiffs had "failed to allege facts which, if proven, would show that the [d]efendant engaged in actionable 'false and misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.'").

In response, Plaintiffs contend Defendants have "ignore[d] the Georgia Supreme Court's rejection of *Cox*." (ECF No. 269 at 27.) In *Bowden v. The Medical Center, Inc.*, the plaintiff brought suit under the GDTPA, alleging her hospital bill was "grossly excessive and did not reflect the reasonable value in the community of her treatment." 773 S.E.2d 692, 694 (Ga. 2015). Plaintiffs' argue that, like the plaintiffs in *Bowden*, the prices they were charged by Defendants were "'grossly' inflated and 'not reasonable.'" (ECF No. 269 at 28.)

Plaintiffs' argument, however, misstates the conclusions of the *Bowden* court and, moreover, *Bowden* is easily distinguishable from the present case. In *Bowden*, the court was not determining what types of claims were actionable under the UDTPA. *Bowden*, 773 S.E.2d at 693. Instead, they were considering "the validity and amount of a hospital lien for the reasonable charges for a patient's care, [and whether] how much the hospital charged other patients, insured or uninsured, for the same type of care during the same time period *is relevant for discovery purposes*." *Id.* (emphasis added). *Bowden*, furthermore, did not overrule *Cox*, it simply found it inapplicable to the dispute before the court. *Id.* at 698 ("[T]he *Cox* line of cases does not directly apply here, because those were summary judgment cases, not discovery cases, and none involved a challenge to a hospital lien.").

Because Plaintiffs have failed to allege Defendants made false or misleading statements regarding price reductions to induce Plaintiffs to purchase insulins, the Court finds Plaintiffs have failed to state a claim under the GDTPA. Accordingly, Defendants' Partial Motion to Dismiss Count Fifteen (Georgia) of the Second Amended Complaint is **GRANTED**.

> ### *v.    Louisiana*

Plaintiffs bring Count Twenty-One of the Second Amended Complaint, against all Defendants, pursuant to The Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), LA. REV. STAT. § 51:1401, *et seq*. (ECF No. 255 ¶¶ 644–51.) Defendants contend Plaintiffs' LUTPA claim should be dismissed in its entirety because Plaintiffs do not allege Defendants acted with the requisite purpose of harming the competition. (ECF No. 263-1 at 17.) Alternatively, Defendants argue Plaintiffs' claim for injunctive relief fails because such relief is not available to private plaintiffs under the statue. (*Id.*)

As an initial matter, the Court finds Plaintiffs' claim for injunctive relief under LUTPA fails as a matter of law. "[T]he right to injunctive relief under LUTPA is available solely to the state through the Attorney General." *Hurricane Fence Co., Inc. v. Jensen Metal Prods., Inc.*, 119 So. 3d 683, 688 (La. Ct. App. 2013); *see* La. Rev. Stat. § 51:1407.[11]

The Court turns next to the merits of Plaintiffs' remaining LUTPA claim. To recover under the LUTPA, a plaintiff must "prove some element of fraud, misrepresentation, deception or other unethical conduct." *IberiaBank v. Broussard*, 907 F.3d 826, 839–40 (5th Cir. 2018) (quoting *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002)). "What constitutes an unfair trade practice is determined by the courts on a case-by-case basis." *Id.* The "'defendant's motivation' is a critical factor—[defendant's] 'actions must have been taken with

---

[11] Plaintiffs concede that "injunctive relief is not available under [LUTPA]." (ECF No. 269 at 18.)

the specific purpose of harming the competition.'" *Id.* at 839–40 (quoting *Monroe v. McDaniel*, 207 So.3d 1172, 1180 (La. Ct. App. 2016)).

In response, Plaintiffs point to *Andretti Sports Marketing Louisiana, LLC v. Nola Motorsports Host Committee, Inc.*, where the court held "the statute does not provide that in order for there to be a violation under LUTPA there must be an intent to harm competition." 147 F. Supp. 3d 537, 566 (E.D. La. 2015).

While the Court agrees that a defendant's motivation is undoubtedly a critical factor in a LUTPA analysis, a reading of the statute and a consideration of the relevant case law leaves the Court unconvinced, at this time, that it is a dispositive one. The Court, therefore, concludes Defendants have failed to meet their burden on a motion to dismiss. Accordingly, Defendants' Partial Motion to Dismiss Count Twenty-One (Louisiana) of the Second Amended Complaint is **GRANTED** to the extent Plaintiffs seek injunctive relief.

### vi.        Minnesota

Plaintiffs bring Count Twenty-Seven of the Second Amended Complaint, against all Defendants, pursuant to the Minnesota Deceptive Trade Practices Act ("MDTPA"), MINN. STAT. ANN. §§ 325D.43–48, *et seq*. ECF No. 255 ¶¶ 691–696.) The MDTPA prohibits the use of deceptive trade practices, which the statue defines as occurring when an individual or entity "makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" of a consumer good. MINN. STAT. ANN. § 325D.44.

Defendants contend Plaintiffs' MDTPA claim should be dismissed to the extent Plaintiffs seek monetary damages because plaintiffs cannot recover monetary damages under the statute. (ECF No. 263-1 at 19.) Plaintiffs "acknowledge that they cannot be awarded damages for

violation[s] of the [MDTPA]." (ECF No. 269 at 19.)[12] Therefore, Defendants' Partial Motion to Dismiss Count Twenty-Seven (Minnesota) of the Second Amended Complaint is **GRANTED** to the extent Plaintiffs seek an award of monetary damages.[13]

       ***vii.***        ***Mississippi***

Plaintiffs bring Count Twenty-Eight of the Second Amended Complaint, against all Defendants, pursuant to The Mississippi Consumer Protection Act ("MCPA"), MISS. CODE ANN. §§ 75-24-1, *et seq.* (ECF No. 255 ¶¶ 697–701.)

Defendants contend Plaintiffs' MCPA claim should be dismissed because Plaintiffs failed to comply with the statute's pre-suit dispute resolution requirement. (ECF No. 263-1 at 19–20.) The MCPA requires a plaintiff bringing a private action to "have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." MISS. CODE. ANN. § 75-24-15. Defendants argue that because Plaintiffs do not allege facts that indicate they sought to avail themselves of the pre-suit process, their MCPA claim must be dismissed. (ECF No. 263-1 at 20.)

Plaintiffs advance a similar *Shady Grove* argument as described *supra*. In support of their claim that the MCPA's pre-suit dispute resolution requirement is not dispositive, Plaintiffs point to two district court cases from Texas, where courts found Texas state-law mediation requirements

---

[12] This Court previously held that the MDTPA "disallows the recovery of monetary damages." *See MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, No. 18-2211, 2019 WL 1418129, at *19 (D.N.J. Mar. 29, 2019).

[13] The MDTPA does permit injunctive relief and the recovery of attorneys' fees. *MSP Recovery Claims, Series, LLC*, 2019 WL 1418129, at *19 (D.N.J. Mar. 29, 2019).

were inapplicable under *Shady Grove*.[14] Plaintiffs' argument is unconvincing. Unlike in defense of its CCPA and UCSPA claims, here Plaintiffs fail to cite to a single case, post-*Shady Grove*, wherein a court has held the plaintiffs do not need to comply with MCPA's pre-suit dispute resolution requirement. (*See generally* ECF No. 269.)

Despite drawing all inferences in favor of Plaintiffs, the Court finds they have failed to state a claim under MCPA. Accordingly, Defendants' Partial Motion to Dismiss Count Twenty-Eight (Mississippi) of the Second Amended Complaint is **GRANTED**.

### *viii.* *Washington*

Plaintiffs bring Count Forty-Seven of the Second Amended Complaint, against all Defendants, pursuant to The Washington Consumer Protection Act ("WCPA"), WASH. REV. CODE. § 19.86.010, *et seq*. (ECF No. 255 ¶¶ 851–57.)

Defendants contend Plaintiffs' WCPA claim should be dismissed because indirect purchasers lack standing to sue under the statute. (ECF No. 263-1 at 21.) Washington courts have indeed held the statute precludes claims from indirect purchasers. *Blewett v. Abbott Labs.*, 86 Wash. App. 782, 790 (1997) ("[An] indirect purchaser has not suffered cognizable injury under the [W]CPA."); *see also Blaylock v. First Am. Title Ins. Co.*, 2008 WL 8741396, at *9 (W.D. Wash. Nov. 7, 2008) ("The [W]CPA has consistently been interpreted to favor direct victims of unlawful practices and exclude indirect victims.")

Plaintiffs do not contest Defendants' interpretation of the statute and simply reiterate their

---

[14] *See Prado v. Allstate Tex. Lloyd's*, 2016 WL 9414132 (W.D. Tex. Nov. 16, 2016) (finding that, under *Shady Grove*, state-law mediation requirements do not apply in diversity action, because 28 U.S.C. § 652 and Fed. R. Civ. P. 16 govern dispute resolution); *Essex Ins. Co. v. Levy Props., Inc.*, 2013 WL 12112119, at *1 (N.D. Tex. May 7, 2013) ("[T]he procedure to mediate pursuant to [Texas Insurance Code] section 541.161 is more procedural in nature than substantive and conflicts with the Federal Rules of Civil Procedure which allow for a court to manage cases and order mediation of a case as determined by the Court.").

assertion that they are not indirect purchases. (ECF No. 269 at 19 n.22.) Because this Court has already found Plaintiffs are indirect purchasers, Defendants' Partial Motion to Dismiss Count Forty-Seven (Washington) of the Second Amended Complaint is **GRANTED**.

> ### ix.        *West Virginia*

Plaintiffs bring Count Forty-Eight of the Second Amended Complaint, against all Defendants, pursuant to The West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. VA. CODE §§ 46A-6-101, *et seq.* (ECF No. 255 ¶¶ 858–69.) Defendants contend Plaintiffs' WVCCPA claim should be dismissed because the statute "does not apply to cases involving the purchase of prescription drugs." (ECF No. 263-1 at 22.)

In *White v. Wyeth*, the Supreme Court of Appeals of West Virginia held that "the private cause of action afforded consumers under [WVCCPA] does not extend to prescription drug purchases." 705 S.E.2d 828, 838 (W. Va. 2010). Likewise, in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, the district court dismissed, on the same grounds, plaintiffs' WVCCPA claims in a case involving allegations of an "unlawful scheme or schemes to fix, maintain and stabilize prices." 368 F. Supp. 3d 814, 820, 849 (E.D. Pa. 2019) (citing *White*, 705 S.E.2d at 838).

Plaintiffs attempt to distinguish their case from *White* by arguing that *White* did not address claims relating to prescription drug pricing. (ECF No. 269 at 34–35.) Plaintiff does not attempt to distinguish *In re Generic Pharmaceuticals* on the merits. Rather, Plaintiffs argue that because the court "applied *White* without analysis" and "did not address the distinction between pricing and drug safety as it relates to *White*," the case does not support Defendants' argument. (ECF No. 269 at 36.)

Plaintiffs' assertions are unconvincing and do not offer this Court sufficient rationale to

depart from the rationale of *White* and *In re Generic Pharmaceuticals*. Accordingly, Defendants'
Partial Motion to Dismiss Count Forty-Eight (West Virginia) of the Second Amended Complaint
is **GRANTED**.

### IV.   CONCLUSION

For the reasons set forth above, Defendants' Partial Motion to Dismiss the New Insulin
Claims is **DENIED**; Defendants' Partial Motion to Dismiss the RICO Claims is **GRANTED**;
Defendants' Partial Motion to Dismiss state consumer protection law causes of action is
**GRANTED** with respect to Arizona (Count Six), Georgia (Count Fifteen), Mississippi (Count
Twenty-Eight), Washington (Count Forty-Seven), and West Virginia (Count Forty-Eight) and
**DENIED** with respect to Colorado (Count Ten) and Utah (Count Forty-Five); Defendants' Partial
Motion to Dismiss is **GRANTED** to the extent Plaintiffs seek disgorgement and restitution with
respect to California (Count Nine); Defendants' Partial Motion to Dismiss is **GRANTED** to the
extent Plaintiffs seek injunctive relief with respect to Louisiana (County Twenty-One); and
Defendants' Partial Motion to Dismiss is **GRANTED** to the extent Plaintiff's seek an award of
monetary damages with respect to Minnesota (Count Twenty-Seven). An accompanying order will
follow.

Date: February 20, 2020                    *s/ Brian R. Martinotti*
                                           HON. BRIAN R. MARTINOTTI
                                           UNITED STATES DISTRICT JUDGE