**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE INSULIN PRICING LITIGATION | Case No. 3:17-cv-699 (BRM) (LHG) |
| ROCHESTER DRUG CO-OPERATIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ELI LILLY AND COMPANY, *et al.*, <br><br> Defendants. | Case No. 3:20-cv-3426 (BRM) (LHG) |
| FWK HOLDINGS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NOVO NORDISK INC., *et al.*, <br><br> Defendants. | Case No. 3:20-cv-3480 (BRM) (LHG) |
| VALUE DRUG COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> ELI LILLY AND COMPANY, *et al.*, <br><br> Defendants. | Case No. 3:20-cv-5129 (BRM) (LHG) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are a series of motions filed by the parties in the above-captioned cases. Specifically, these cases are: (1) Civil Action No. 17-699, captioned *In Re Insulin Pricing Litigation* (the "IPP Action"), a consolidated class-action suit brought by a proposed nationwide class of similarly situated indirect purchasers and consumers of analog insulins (the "IPP Plaintiffs") against defendant drug manufacturers Novo Nordisk Inc. ("Novo Nordisk"), Sanofi Aventis U.S. LLC ("Sanofi"), and Eli Lilly and Company ("Eli Lilly") (collectively, the "Manufacturer Defendants"); (2) Civil Action No. 20-3426, captioned *Rochester Drug Co-Operative, Inc. v. Eli Lilly and Company, et al.* (the "Rochester Action"), a putative class action suit brought by Rochester Drug Co-Operative, Inc. ("Rochester") on behalf of a proposed class of similarly situated direct purchasers of analog insulins, against the Manufacturer Defendants and CVS Health Corporation, Caremark PCS Health, LLC, Caremark Rx LLC (collectively, "CVS Caremark"), Express Scripts Holding Company, Express Scripts, Inc., Medco Health Solutions, Inc. (collectively, "Express Scripts"), United Health Group Incorporated, United Healthcare Services, Inc., Optum, Inc., OptumRx Holdings, LLC, and OptumRx, Inc. (collectively "OptumRx") (together, with CVS Caremark and Express Scripts, the "PBM Defendants"); (3) Civil Action No. 20-3480, captioned *FWK Holdings, LLC v. Novo Nordisk Inc., et al.* (the "FWK Action"), a putative class action suit brought by FWK Holdings, LLC ("FWK") on behalf of a proposed class of similarly situated direct purchasers of analog insulins, against the Manufacturer Defendants and PBM Defendants; and (4) Civil Action No. 20-5129, captioned *Value Drug Company v. Eli Lilly and Company, et al.* (the "Value Drug Action") (together with the Rochester Action and the FWK Action, the "DPP Actions"), a putative class action suit brought by Value Drug Company ("Value Drug") (together with Rochester and FWK, the "DPP

Plaintiffs") on behalf of a proposed class of similarly situated direct purchasers of analog insulins, against the Manufacturer and PBM Defendants.

Because these cases involve similar allegations of price fixing relating to the benchmark prices of various analog insulins, many of the parties listed above are involved in multiple cases simultaneously, and the various dockets are replete with duplicative filings. The Court, therefore, finds the interest of judicial economy is best served by a single opinion addressing the various motions pending before it. These motions are: (1) Rochester and Value Drug's joint motion to consolidate the DPP Actions, and appoint Garwin Gerstein & Fisher LLP as interim lead class counsel ("Rochester's Motion")[1]; (2) FWK's motion to consolidate the DPP Actions, coordinate the IPP Action and the DPP Actions, appoint Diane Nast, Michael Roberts, and Don Barrett as co-interim lead class counsel, and appoint Peter S. Pearlman as interim liaison class counsel ("FWK's Motion")[2]; and (3) the IPP Plaintiffs' cross-motion to stay the DPP Actions pending the completion of discovery in the IPP Action (the "IPP Plaintiffs' Motion").[3]

For the reasons set forth herein: (1) Rochester's Motion is **GRANTED IN PART and DENIED IN PART**; (2) FWK's Motion is **GRANTED IN PART and DENIED IN PART**; and (3) the IPP Plaintiffs' Motion is **DENIED**.

---

[1] Rochester's Motion is filed at ECF No. 41 in the Rochester Action, at ECF No. 8 in the FWK Action, and at ECF No. 6 in the Value Drug Action. Rochester's Motion was not filed in the IPP Action.

[2] FWK's Motion is filed at ECF No. 43 in the Rochester Action, and ECF No. 342 in the IPP Action. FWK's Motion was not filed in the FWK Action or the Value Drug Action.

[3] The IPP Plaintiffs' Motion is filed ECF No. 344 in the IPP Action, at ECF No. 52 in the Rochester Action, at ECF No. 20 in the FWK Action, and at ECF No. 16 in the Value Drug Action.

I. **BACKGROUND**[4]

    A.    **The IPP Action**[5]

The IPP Action is a putative class action suit initiated on February 2, 2017. (ECF No. 1.) On March 18, 2019, the IPP Plaintiffs filed a Second Amended Complaint on behalf of themselves and a proposed nationwide class of analog insulin consumers. (*See* ECF No. 255.) The IPP Plaintiffs asserted claims pursuant the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, and various state consumer protection laws. (*See generally id.*). The IPP Plaintiffs define their proposed class as:

> All individual persons in the United States and its territories who paid any portion of the purchase price for a prescription of Apidra, Basaglar, Fiasp, Humalog, Lantus, Levemir, Novolog, Tresiba, and/or Toujeo at a price calculated by reference to a benchmark rice, AWP (Average Wholesale Price), or WAC (Wholesale Acquisition Price) for purposes other than resale.

(*Id.* ¶ 366.) Specifically, the class includes uninsured consumers, consumers in high-deductible health plans, consumers who reach the Medicare Part D donut hole, and consumers with high coinsurance rates. (*Id.* ¶ 369.) Manufacturer Defendants are the named defendants in the IPP Action.

On February 20, 2020, the Court granted in part and denied in part Manufacturer Defendants' motion to dismiss the IPP Plaintiffs' Second Amended Complaint. (ECF No. 304.) On April 30, 2020, the Honorable Lois H. Goodman, U.S.M.J. entered a case management order

---

[4] The factual backgrounds of these cases are well-known to the parties and not relevant to the resolution of the pending motions. The Court, therefore, dispenses with its customary recitation of the factual histories of these matters and refers the parties, to the extent necessary, to the factual background contained in the Court's February 20, 2020 Opinion. (Civil Action No. 17-699, ECF No. 304).

[5] All ECF citations in this subsection reference the docket of Civil Action No. 17-699.

4

coordinating and setting deadlines for, *inter alia*, amending pleadings and fact discovery. (ECF No. 334.) On May 13, 2020, the Court appointed the Honorable Dennis M. Cavanaugh, U.S.D.J. (ret.) to serve as special master for the IPP Action, pursuant to Federal Rule of Civil Procedure 53(b). (ECF No. 339.) On June 4, 2020, the Manufacturer Defendants answered the Second Amended Complaint. (ECF Nos. 348, 349, 350.)

### B. The Rochester Action[6]

The Rochester Action is a putative class action suit initiated on March 31, 2020. (ECF No. 1.) Rochester filed its complaint against the Manufacturer Defendants and PBM Defendants "on behalf [of] a proposed class of direct purchasers of analog [i]nsulin[s] . . . to recover overcharges due to . . . [the] artificial inflation of prices in the United States for the analog [i]nsulin medications at issue in th[e] complaint." (*Id.* ¶ 1.) Rochester asserted claims pursuant to RICO against the Manufacturer Defendants and PBM Defendants. (*Id.* ¶¶135–234.)

### C. The FWK Action[7]

The FWK Action is a putative class action suit initiated on March 31, 2020. (ECF No. 1.) FWK filed its complaint against the Manufacturer Defendants and PBM Defendants on behalf of three proposed classes of direct purchasers of analog insulins. (*Id.* ¶ 2.) FWK asserted claims against the Manufacturer Defendants and PBM Defendants for violations of RICO, the Sherman Act, 15 U.S.C. §§ 1, *et seq*., the Robinson-Patman Act, 15 U.S.C. § 13(c), and the New Jersey RICO statute, N.J.S.A. §§ 2C:41-1, *et seq.* (*Id.* ¶¶ 292–924.)

---

[6] All ECF citations in this subsection reference the docket of Civil Action No. 20-3426.

[7] All ECF citations in this subsection reference the docket of Civil Action No. 20-3480.

### D. The Value Drug Action[8]

The Value Drug Action is a putative class action suit initiated on April 27, 2020. (ECF No. 1). Value Drug filed its complaint against the Manufacturer Defendants and PBM Defendants "on behalf [of] a proposed class of direct purchasers of analog insulin[s] from the Defendant [] Manufacturers . . . and the [PBM] Defendant[s] to recover overcharges due to the Defendant [] Manufacturers' artificial inflation of prices." (*Id.* ¶ 1.) Value Drug asserted claims for violations of RICO. (*See generally id.*)

## II. LEGAL STANDARDS

### A. Rule 42(a)

"Federal Rule of Civil Procedure 42(a) grants trial courts broad discretion to 'streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues' by consolidating related cases." *United States v. 662 Boxes of Ephedrine*, 590 F. Supp. 2d 703, 707 (D.N.J. 2008) (quoting *In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000)). "The Third Circuit recognizes that this rule confers upon a district court broad power, whether at the request of a party or upon its own initiative, to consolidate causes for trial as may facilitate the administration of justice." *April Denise Williams v. USA, et al.*, Civil Action No. 18-14455, 2018 WL 4929390, at *6 (D.N.J. Oct. 11, 2018) (quoting *Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964)). Indeed, "Rule 42(a) is permissive and grants the court broad discretionary powers to order consolidation if it would . . . avoid unnecessary costs or delay." *Durso v. Samsung Elecs. Am., Inc.*, No. 12-5352, 2014 WL 1232332, at *1 (D.N.J. Mar. 24, 2014) (citing *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 80–81

---

[8] All ECF citations in this subsection reference the docket of Civil Action No. 20-5129.

(D.N.J.1993)). "[W]hen exercising its discretion on a consolidation motion, a court should weigh the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice." *Murrell v. City of Hackensack*, No. 16-2913, 2017 WL 4317387, at *2 (D.N.J. Sept. 28, 2017) (quoting *Margolis v. Hydroxatone, LLC*, 2013 WL 875987, at *2 (D.N.J. Mar. 6, 2013)). "The mere existence of common issues, however, does not require consolidation." *Id.*

### B.     Motion to Stay

"A United States district court has broad power to stay proceedings." *Mastec Renewables Constr. Co., Inc. v. Mercer Cty. Improvement Auth.*, No. 15-1897, 2017 WL 6493141, at *3 (D.N.J. Dec. 19, 2017) (quoting *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL–CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976)).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Id.* (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). When considering whether to grant a stay, a Court will generally weigh a number of factors, including:

> (1) [W]hether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set.

*Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (internal quotations and citations omitted); *see, e.g., Bechtel Corp.*, 544 F.2d at 1215 (stating that a district court may "hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues").

7

### C. Rule 23(g)

Federal Rule of Civil Procedure 23(g)(3) provides, in relevant part, that the "[C]ourt may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." "If more than one adequate applicant seeks appointment, the [C]ourt must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). When appointing lead class counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

### III. DECISION

#### A. Rochester's Motion[9]

On May 21, 2020, Rochester and Value Drug jointly filed a motion seeking to: (1) consolidate the DPP Actions and (2) appoint Garwin Gerstein & Fisher LLP as interim lead class counsel. (ECF No. 41-1.) On June 1, 2020, the Manufacturer Defendants e-filed correspondence (the "Manufacturers' Correspondence") indicating that they "fully support consolidation of the DPP [A]ctions and the filing of a single operative complaint, and take no position on the appointment of interim lead counsel." (ECF No. 47 at 1.) On the same day, the PBM Defendants filed a response to Rochester's Motion wherein they similarly supported consolidation, took no position on the appointment of interim lead counsel, and further requested the Court order the DPP Plaintiffs to jointly file a consolidated amended complaint. (ECF No. 49 ¶¶ 2, 4.) FWK filed

---

[9] All ECF citations in this subsection reference the docket of Civil Action No. 20-3426, unless otherwise noted.

opposition to Rochester's proposed interim lead class counsel (ECF No. 50), to which Rochester replied (ECF No. 56).

Rule 42(a) "grants trial courts broad discretion to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues by consolidating related cases." *662 Boxes of Ephedrine*, 590 F. Supp. 2d at 707 (D.N.J. 2008) (internal quotation omitted). "When exercising this discretion, a court should weigh the benefits of judicial economy against the potential for new delays, expense, confusion or prejudice." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 176 (D.N.J. 2008). "In the absence of an articulated basis to assert confusion or prejudice, consolidation is generally appropriate." *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 570 (D.N.J. 2003) (citing *In re Lucent Techs. Inc. Securities Litig.,* 221 F. Supp. 2d 472, 480 (D.N.J. 2001)).

Rule 42 does not require "pending suits be identical before they can be consolidated." *In re Lucent Techs.*, 221 F. Supp. 2d. at 480. Rather, a court considers

> whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses, lawsuits, the length of time required to conclude multiple lawsuits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (quoting *In re Consolidated Parlodel Litig.,* 182 F.R.D. 441, 444 (D.N.J. 1998)).

Here, the Court finds the DPP Actions are closely related and involve similar legal and factual issues. Rochester, FWK, and Value Drug all bring claims on behalf of putative classes of direct purchasers of analog insulins who assert injuries related to a common set of operative facts. Rochester and Value Drug are represented by the same counsel and, as a result, their complaints are virtually identical. (*Compare* ECF No. 1 in the Rochester Action *with* ECF No. 1 in the Value

9

Drug Action.) Under Rule 42, suits need not be identical in order to be consolidated. FWK's antitrust claims, therefore, do not prevent consolidation. Additionally, the DPP Plaintiffs and the Manufacturer Defendants and PBMs all support consolidation of the DPP Actions. The Court finds, therefore, that the benefits of judicial economy far outweigh any concerns regarding new delays, expenses, confusion, or prejudice. Rochester's Motion, to the extent it seeks to consolidate the DPP Actions, is **GRANTED**.

Rochester also seeks an order appointing Garwin Gerstein & Fisher LLP as interim lead class counsel. (ECF No. 41-1 at 9.) Because the Court grants FWK's Motion to the extent it seeks appointment of interim lead class counsel, as discussed in Section III.B., *infra*, Rochester's Motion to the extent they seek the same relief is necessarily **DENIED**.

**B.     FWK's Motion[10]**

On May 21, 2020, FWK filed a motion seeking to: (1) consolidate the DPP Actions; (2) coordinate of the newly consolidated DPP Actions with the IPP Action; (3) appoint Dianne Nast, Michael Roberts, and Don Barret as interim lead class counsel; and (4) appoint Peter S. Pearlman as interim liaison counsel. (ECF No. 43.)

Although the Manufacturer Defendants support consolidation of the DPP Actions, they oppose FWK's request to coordinate the DPP and IPP Actions. (*See* ECF No. 47 at 1.) The Manufacturers' Correspondence notes that FWK "made no attempt to confer with the [Manufacturer Defendants] about this issue, and the coordination it seeks is unclear." (*Id.*) The Manufacturer Defendants further argue that coordination is "premature at best" because the IPP

---

[10] The Court notes, once again, that FWK's Motion was not filed in the FWK Action or the Value Drug Action. FWK's Motion is filed at ECF No. 43 in the Rochester Action, and ECF No. 342 in the IPP Action. Because the Court grants Rochester's Motion, all ECF citations in this subsection refer to the docket of the Rochester Action.

10

Action has progressed through dispositive motions and begun fact discovery while the DPP Actions have only recently been filed. (*Id.* at 1–2.) The PBM Defendants similarly opposed FWK's "undefined request" to coordinate the DPP Actions with the IPP Action. (ECF No. 49 ¶ 5.) On June 2, 2020, the IPP Plaintiffs opposed FWK's Motion to the extent FWK sought coordination. (ECF No. 52.) Rochester and Value Drug noted that although they did not oppose coordination, that "the issue need not be decided right now" because the IPP Action is at a much different stage of the litigation. (ECF No. 48 at 2 n.2.) The Court addresses each of FWK's requests in turn.

First, because the Court grants Rochester's Motion, to the extent it seeks consolidation of the DPP Actions, the Court finds that FWK's Motion, to the extent it seeks the same relief, is moot and is therefore **DENIED**.

Second, FWK seeks coordination of the DPP Actions with the IPP Action. (ECF No. 43-1 at 5.) FWK argues that, although there are minor differences between the suits, "the similarities . . . are much more pronounced." (*Id.* at 6.) Specifically, FWK contends all four actions "challenge the manner in which drug manufacturers and PBMs worked together to manipulate the price of analog insulin products" and that all of the plaintiffs were similarly injured because they paid "higher prices for their analog insulin products." (*Id.*) FWK argues that coordination of discovery requests, document production, and depositions will lead to increased judicial efficiency. (*Id.* at 6–7.)

As discussed, both the Manufacturer and PBM Defendants oppose FWK's request to coordinate the DPP and IPP Actions. The IPP Plaintiffs similarly oppose coordination, arguing that coordination will not improve judicial efficiency but will instead create problems because "[t]he two sets of plaintiffs [are] proceed[ing] under different legal theories. And their divergent,

11

if not opposing, view of the facts render formal coordination of discovery detrimental to both sides." (ECF No. 52 at 6.)

Here, the Court agrees with the Manufacturer Defendants, PBM Defendants, and IPP Plaintiffs and finds that judicial economy is not served by coordinating discovery between the DPP and IPP Actions. Contrary to FWK's assertion, the Court finds there are material differences between the DPP Actions and the IPP Action that preclude coordination. As discussed in their opposition brief, the IPP Plaintiffs allege that wholesalers, like the DPP Plaintiffs, are not victims of the Defendants' pricing scheme. (ECF No. 52 at 6.) Rather, "as sophisticated members of the pharmaceutical industry, the wholesalers kn[e]w of the relevant list price scheme" and "play[ed] a part [in] the unlawful scheme to widen the gulf between benchmark prices and net manufacturer prices." (*Id.*) (citations omitted). Additionally, the DPP Actions include allegations against the PBM Defendants, a class of defendants the IPP Plaintiffs specifically sought to exclude from their case. (*Id.* at 7) (citation omitted). Finally, the Court finds coordination is not warranted because the DPP Actions and the IPP Action are at substantially different stages of litigation. *See In re: Testofen Mktg. & Sales Practices Litig.*, 96 F. Supp. 3d 1371, 1372 (U.S. Jud. Pan. Mult. Lit. 2015) (finding that informal coordination would be "sufficient to prevent duplicative discovery and ensure coordinated pretrial proceedings"); *see also Fin-Ag, Inc. v. NAU Country Ins. Co.*, No. 08-4141, 2009 WL 44479, at *3 (D.S.D. Jan. 6, 2009) ("Because the cases are at much different stages of preparation and litigation, consolidation would cause further delay and, thus, is not appropriate."). FWK even acknowledges the timing concerns in its brief, noting that "[t]he IPP Action has been litigated for three years, and it would be unjust to expect its parties to wait for the DPP Actions to catch up." (ECF No. 43-1 at 6.) FWK's non-specific assertion that "[e]fficiencies can still be gained, however, by appropriately coordinating at certain times, such as with discovery

12

requests, document products, and depositions," (*id.* at 7), is insufficient to overcome these concerns. Moreover, FWK fails to cite a single case, from this District and Circuit or otherwise, in support of their coordination request. (*See generally, id.*) FWK's Motion, to the extent it seeks coordination of the DPP and IPP Actions, is therefore **DENIED**.

Third, FWK seeks an order appointing Dianne M. Nast, Michael L. Roberts, and Don Barrett as interim co-lead class counsel. (ECF No. 43-1 at 4.) A "[C]ourt may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "If more than one adequate applicant seeks appointment, the [C]ourt must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). Here, the Court finds that all parties will be well served by the appointment of Dianne M. Nast, Michael L. Roberts, and Don Barrett as interim co-lead class counsel. All three individuals have substantial experience litigating complex commercial disputes including class action and antitrust matters, and their attached resumes, curriculum vitae, and affidavits have convinced the Court that they are best able to represent the interests of the putative direct purchaser class. (*See* Exs. 1–3 to ECF No. 43.) FWK's Motion, to the extent they seek such an appointment, is therefore **GRANTED**.

Finally, FWK seeks an order appointing Peter S. Pearlman, Esq., of Cohn Lifland Pearlman Herrmann & Knopf LLP, as interim liaison counsel. (ECF No. 43-1 at 22.) FWK contends that Mr. Pearlman's substantial experience with complex commercial litigation and antitrust litigation matters make him well qualified to serve as liaison counsel. Rochester and Value Drug stated that they did not object to Mr. Pearlman's appointment. (ECF No. 48 at 1.) The Court finds that Mr. Pearlman's resume indeed makes him well-qualified to serve as liaison counsel and finds the list

of duties included in FWK's proposed form of order reasonable. FWK's Motion, to the extent is seeks the appointment of Peter S. Pearlman as interim liaison counsel, is **GRANTED**.

### C. The IPP Plaintiffs' Motion[11]

On June 1, 2020, the IPP Plaintiffs filed a cross-motion seeking an order staying the DPP Actions pending completion of discovery in the IPP Action. (ECF No. 344.) On June 8, 2020, Rochester, Value Drug, and FWK opposed the IPP Plaintiffs' Motion. (ECF Nos. 355, 356.)

The IPP Plaintiffs argue that staying the DPP Actions would preserve judicial resources and streamline the litigation by resolving common issues of fact, including,

> (1) [the] how, why, and when the pharmaceutical companies raise the list prices of their insulins; (2) the role and possible culpability of the PBMs in that process; and (3) the role and potential culpability of the wholesalers themselves. In other words, the consumer cases will decide core matters affecting the wholesaler actions, if not render them moot entirely.

(ECF No. 344 at *13.)[12] The IPP Plaintiffs contend that "[p]roceeding with costly litigation in [the DPP Actions] now, when the [IPP Action] has such a significant head start, would only waste resources. It will slow down the [IPP Action], burden several more parties, and saddle the judiciary while complicating case management." (*Id.*) The IPP Plaintiffs further argue that, because the DPP Actions were only recently filed, no party has engaged in significant motion practice which supports the issuance of a stay; discovery in the IPP Action will "provide clarity" and reduce the litigable issues in the DPP Actions; the absence of a stay will harm the IPP Plaintiffs, many of whom are sick; and the DPP Plaintiffs "cannot credibly complain that awaiting resolution of the

---

[11] All ECF citations in this subsection reference the docket of the IPP Action, unless otherwise noted.

[12] There appears to be some sort of pagination error in the IPP Plaintiff's Motion causing nearly every page to be labeled as page "14." The Court, therefore, refers to the pages of the IPP Plaintiffs' Motion as listed in the ECF header and denotes such reference with an asterisk.

[IPP Action] will cause them excessive harm [because] they willfully sat on the sidelines for three years before filing" the DPP Actions. (*Id.* at 14.)

In opposition, the DPP Plaintiffs argue that a stay is unwarranted because (1) it would result in the DPP Plaintiffs being placed at a tactical disadvantage; (2) it would not simplify the issues for trial because, as argued by the IPP Plaintiffs in their opposition to FWK's Motion to coordinate, the parties are advancing substantially different legal theories; and (3) the IPP Plaintiffs would not suffer harm in the absence of a stay. (*See generally* ECF Nos. 355, 356.)

As discussed, courts have broad powers to stay proceedings and generally consider four factors when determining whether to grant a stay, including:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set.

*Akishev*, 23 F. Supp. 3d at 446; *see also Zemel v. CSC Holdings LLC*, No. 18-2340, 2018 WL 6242484, at \*6 (D.N.J. Nov. 29, 2018) ("To determine the appropriateness of a stay, courts consider 'whether a stay will simplify issues and promote judicial economy, the balance of harm to the parties, and the length of the [] stay.'") (citation and internal quotation omitted). However, "[a] stay is an extraordinary measure." *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citations omitted). "The moving party must state a clear countervailing interest to abridge [another] party's right to litigate." *Mastec Renewables*, 2017 WL 6493141, at \*3 (citing *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 139 (3d Cir. 2004)). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."

15

*Landis*, 299 U.S. at 255. The moving party "must demonstrate a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075–76 (3d Cir. 1983) (internal quotation and citation omitted).

Here, the Court finds that the IPP Plaintiffs have failed to meet their burden of establishing a stay is warranted. As to the first factor, the Court finds that the DPP Plaintiffs, the non-moving party, would suffer prejudice if their cases were stayed. The effect of a stay would prevent the DPP Plaintiffs from litigating their case and conducting discovery for an extended period of time. As discussed in the parties' briefing, the IPP Plaintiffs and DPP Plaintiffs are pursuing different legal theories relating to the liability and culpability of various parties for the alleged price fixing scheme. Indeed, in their opposition to FWK's request for coordination, the IPP Plaintiffs argued that wholesalers, like the DPP Plaintiffs, are not victims but rather participants in the alleged price fixing scheme. (ECF No. 344 at *9.) The Court agrees with the DPP Plaintiffs' concern that a stay would permit the IPP Plaintiffs to develop a discovery record that was supportive of their legal theories, to the potential detriment of the DPP Plaintiffs. The Court, accordingly, finds this factor weighs against granting a stay. *See, e.g.*, *Trusted Transportation Sols., LLC v. Guarantee Ins. Co.*, No. 16-7094, 2018 WL 2187379, at *4 (D.N.J. May 11, 2018) ("If a stay is granted plaintiff's efforts to promptly and efficiently prosecute its case would be hampered. There is no question that a stay would substantially delay plaintiff's efforts to diligently proceed to sustain [its] claim.") (internal quotation and citation omitted); *Gold*, 723 F.2d at 1076 ("[T]he clear damage to the plaintiffs is the hardship of being forced to wait for an indefinite and, if recent experience is any guide, a lengthy time before their causes are heard.").

As to the second factor, the Court finds that the IPP Plaintiffs have failed to establish they will suffer a clear case of hardship or inequity in the absence of a stay. The IPP Plaintiffs assert that "the absence of a stay will exacerbate the harm delay has already caused the [IPP Plaintiffs]; several [IPP Plaintiffs] have actually died as this case has dragged on." (ECF No. 344 at *14.) It is unclear to the Court, however, how the absence of a stay would result in the harm the IPP Plaintiffs fear. The Court has denied FWK's request to coordinate the DPP and IPP Actions and, therefore, the IPP Action will continue on its present schedule. The DPP Plaintiffs have also not requested the IPP Action's discovery schedule be altered to accommodate their cases. The Court, accordingly, finds this factor weighs against granting a stay.

The Court is similarly skeptical that a stay would promote judicial economy by "more quickly resolving dispositive issues without encumbering fifteen new parties in discovery," as the IPP Plaintiffs contend. (ECF No. 344 at *14.) While there are undoubtedly similarities in the factual allegations of the cases, the DPP Plaintiffs' inclusion of the PBM Defendants—a class of defendants the IPP Plaintiffs specifically sought to exclude from their case—and the parties' opposing theories relating to the liability and culpability of various parties, appear to severely limit the potential for common dispositive issues to be resolved. The Court, accordingly, finds this factor weighs against granting a stay. *See, e.g.*, *Trusted Transportation Sols., LLC*, 2018 WL 2187379, at *6 (denying motion to stay where, although there was an "overlap of relevant facts," the court found that "separate and independent claims" had been asserted against one group of defendants but not another); *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535, 542 (D.N.J. 2008) (denying motion to stay were, although the different proceedings "arise out of the same nucleus of facts, there are differences in the factual and legal issues"). Because the Court finds the IPP

17

Plaintiffs have failed to meet their burden of establishing that the circumstances justify the imposition of a stay, the IPP Plaintiffs' Motion is **DENIED**.

**IV.    CONCLUSION**

For the reasons set forth above, (1) Rochester's Motion is **GRANTED IN PART and DENIED IN PART**; (2) FWK's Motion is **GRANTED IN PART and DENIED IN PART**; and (3) The IPP Plaintiffs' Motion is **DENIED**. An accompanying Order will follow.

**Date: September 22, 2020**                                *s/ Brian R. Martinotti*
                                                            **HON. BRIAN R. MARTINOTTI**
                                                            **UNITED STATES DISTRICT JUDGE**